JUDGE SUBRAMANIAN

26 CV 06508

**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| John Doe, | Case No.: _____ |
| Plaintiff, | **COMPLAINT FOR DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT OF 1973** |
| v. | |
| Daniel F. Martuscello III, as Commissioner of the New York State Department of Corrections and Community Supervision, | |
| Defendant. | |

## INTRODUCTION

1.    Plaintiff John Doe ("Plaintiff") brings this action against Daniel F. Martuscello III as Commissioner of the New York State Department of Corrections and Community Supervision ("Defendant" or "DOCCS"), and states as follows:

## JURISDICTION AND VENUE

2.    This is an action for declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., and Section 504 of the Rehabilitation Act of 1972 ("Section 504"), 29 U.S.C. § 794. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343, and jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202.

3.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because Plaintiff is incarcerated at a correctional facility operated by Defendant in this District, and a substantial portion of the conduct complained of herein occurred in such facility and hence in this District.

## PARTIES

4.      DOCCS operates the correctional facilities of New York State.  The New York State Office of Mental Health ("OMH") functions within the correctional facilities of DOCCS to provide mental health services to incarcerated individuals.  OMH is not a defendant in this action.

5.      Plaintiff is 47 years old and has been incarcerated in the correctional system of DOCCS since 2014. Under the terms of his sentence, Plaintiff will remain incarcerated in the DOCCS correctional system until at least 2030 (and until 2034 if his maximum sentence applies).  Since October, 2024, Plaintiff has been incarcerated at Sing Sing Correctional Facility ("Sing Sing"), which is operated by DOCCS.

## FACTS

### DOCCS is subject to the ADA and Section 504

6.      The DOCCS correctional system is required to comply with the ADA and the regulations promulgated under the ADA.  Among other requirements, DOCCS is required by the regulations promulgated under the ADA (i) to ensure that qualified inmates or detainees with disabilities shall not, because a facility is inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of, the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity; (ii) to ensure that inmates or detainees with disabilities are housed in the most integrated setting appropriate to the needs of the individuals; and (iii) not to place inmates or detainees with disabilities in facilities that do not offer the same programs as the facilities where they would otherwise be housed.  28 C.F.R. §35.152.

7.      DOCCS receives federal financial assistance and hence is required to comply with Section 504.

**Plaintiff's autism constitutes a disability under the ADA and the Rehabilitation Act.**

8. Plaintiff has autism, a disability as such term is defined under the ADA and the Rehabilitation Act. Multiple OMH clinicians to whose caseload Plaintiff has been or is assigned have provided written diagnoses finding that Plaintiff suffers from autism, also sometimes referred to as an autism spectrum disorder.

9. Plaintiff's autism substantially limits his major life activities of caring for himself, learning, concentrating, thinking, communicating, working, and interacting with others.

**Due to his autism, Plaintiff is ostracized, bullied and mistreated, effectively preventing him from participating in facility programs and activities.**

10. Plaintiff's autism makes it very difficult for him to interact with others, including other incarcerated individuals and corrections officers. Plaintiff does not recognize non-verbal cues in conversations or correctly understand what other people are thinking, and he has trouble with the back-and-forth of conversation.

11. Due to his autism, Plaintiff feels anxious and awkward in interpersonal situations. He is unable to interact with people the way they expect, which leads them to think he is rude or evasive. These symptoms continually put Plaintiff at odds with others and make him a constant victim of bullying and harassment.

12. Plaintiff is ostracized by other incarcerated individuals and mistreated by them and by corrections officers because they find Plaintiff an easy target for ridicule and teasing.

13. Plaintiff also has trouble with his executive function due to his autism. Plaintiff is unable to properly organize his life or his approach to a task, he can't plan for things or transition well from one thing to another, and can't finish what he starts.

14. Plaintiff also has a low IQ, and both staff and other incarcerated individuals in DOCCS facilities constantly call him retarded or stupid.

15.    In addition, Plaintiff's autism makes him constantly on edge and anxious, which often leads to exaggerated reactions and to repetitive behavior that exasperates other people.

16.    In the general population at DOCCS facilities and in his interactions with corrections officers, Plaintiff is discriminated against because of his autism, and everyone makes fun of him. He has no friends either inside or outside of Sing Sing and feels that everyone hates him.

17.    Plaintiff often does not go outside for recreation at Sing Sing because he is constantly taunted and bullied by individuals in the yard, and DOCCS staff does nothing to stop it.. As a result, he is denied access to meaningful recreation.

18.    The only time in his incarceration by DOCCS that Plaintiff felt comfortable going outside for recreation and interacting with other incarcerated individuals was when Plaintiff was incarcerated at Sullivan Correctional Facility, before that facility was closed. There was a Special Needs Unit ("SNU") at Sullivan Correctional Facility, and at recreation and at meals Plaintiff was occasionally able to interact with incarcerated individuals housed in the SNU. On these limited occasions, Plaintiff felt for the first and only time during his incarceration that he was among people who understood him and had some affinity with him.

19.    Plaintiff also constantly fears for his safety because his autism makes him feel that he is an easy target to be exploited. He is frequently physically mistreated or challenged to fight by other incarcerated individuals. Without his consent, he is groped and otherwise sexually harassed by other incarcerated individuals. His autism, the mistreatment and bullying by other incarcerated individuals, and DOCCS's failure to protect him make him constantly feel unsafe and at risk of being injured or worse.

20.    For all of these reasons, Plaintiff often spends 16 hours or more a day alone in his cell.

4

**DOCCS is aware that Plaintiff has autism and is suffering discrimination.**

21.    DOCCS has been fully apprised of Plaintiff's autism and of the discrimination that Plaintiff is suffering at DOCCS's hands as a result of his autism.

22.    On October 21, 2025, Plaintiff, through counsel, sent to the Superintendent of Sing Sing and the DOCCS Office of General Counsel copies of the multiple OMH diagnoses of Plaintiff as autistic and put DOCCS on notice of the discrimination that DOCCS inflicts on Plaintiff as a result of his autism.

23.    On November 17, 2025, Plaintiff, through counsel, sent the Associate Commissioner of DOCCS for Mental Health copies of the multiple OMH diagnoses of his autism, and put the Associate Commissioner on notice of the discrimination he is suffering as a result.  No reply was received to this notice letter.

24.    On February 23, 2026, four months after the notice letter sent on Plaintiff's behalf on October 21, 2025, the DOCCS Deputy Commissioner for Compliance Standards and Diversity wrote to Plaintiff's counsel in response to the October 21, 2025 letter.  In this letter, DOCCS admitted that Plaintiff has been diagnosed with an autism spectrum disorder.

25.    In the February 23, 2026, letter, the DOCCS Deputy Commissioner for Compliance Standards and Diversity claimed that the Sing Sing Intermediate Care Program ("ICP") can address Plaintiff's needs.

**The DOCCS ICP Program is not designed to, and does not, treat or address Plaintiff's autism spectrum disorder.**

26.    The DOCCS ICP program is not designed to treat incarcerated individuals with autism.

27.    DOCCS does not have any program that is designed to address the needs of incarcerated individuals with autism.

28.    Plaintiff receives no meaningful treatment for his autism disability, and DOCCS does nothing to accommodate his autism.

29.    ICP is a residential mental health program operated jointly with OMH for inmates with serious mental illness. However, the DOCCS ICP program does not provide any meaningful treatment or programming for individuals with autism. Hence, Plaintiff often does not attend ICP treatment sessions because they are of no value to him and he feels in danger from the other ICP incarcerated individuals.

30.    There is no other program at Sing Sing or any other DOCCS facility where Plaintiff has been incarcerated that can provide him with meaningful access to programs. None of the academic or vocational education programs, recreational programs, nor any other required programming offer him meaningful access.

31.    Plaintiff's autism and low IQ makes it impossible for Plaintiff to have any success in any job training program. He cannot make change at a cash register and doesn't know how to use a computer. He is not able to learn a trade and perform job tasks without getting frustrated and quitting.

32.    Because of DOCCS's failure to address his known programming needs as an autistic individual, plaintiff has no meaningful opportunity to become prepared to return to society when his incarceration ends.

**A DOCCS Special Needs Unit is currently the safest and most appropriate program placement for Plaintiff even though it does not provide plaintiff with autism specific programming.**

33.    At certain DOCCS correctional facilities other than Sing Sing, DOCCS maintains incarceration units and a program that, while not specifically designed to treat incarcerated individuals with autism spectrum disabilities, would be a more appropriate and integrated setting for Plaintiff. This incarcerated unit is designated by DOCCS as its Special Needs Units ("SNU") and this program as the "SNU Program".

34.    DOCCS's SNU operations and program is governed by a "Special Needs Unit (SNU) Program Manual" issued by DOCCS on September 1, 2021 (the "SNU Manual").

35.    The SNU Manual states that "[t]he purpose of the SNU Program is to provide necessary assistance to incarcerated individuals with intellectual disabilities and/or adaptive behavioral deficits who may be experiencing difficulty adjusting to the prison environment. The SNU Program will assist incarcerated individuals in achieving their goal of successfully functioning in the prison setting or into the community upon release." (SNU Manual, p. 4)

36.    The SNU Manual further states that "[t]he target program for the SNU Program is incarcerated individuals with a WAIS Full Scale IQ score of 70 or below, combined with adaptive behavioral deficits which has resulted in vulnerability or an inability to function in a general population setting." The SNU Manual states that incarcerated individuals with a "history of placement in Special Education should also be considered." (SNU Manual, p. 4)

37.    The SNU Manual further states that, "[o]n a case-by-case basis, incarcerated individuals evidencing significant deficits, which impair successfully functioning in general population, but who have an IQ greater than 70, may be referred to the program. The deficits may be intellectual and/or adaptive in nature [if they result in] significant limitations on the incarcerated individual's effectiveness in meeting the standards expected for his/her age, and/or cultural group in the following areas:  communication, self-care, use of resources, self-direction, academic skills, social/interpersonal skills, work, leisure, health and safety." (SNU Manual, p.5)

38.    The SNU Manual makes clear that it is DOCCS facility staff who make a referral of an incarcerated individual for placement in a SNU by submitting the referral to DOCCS Mental Health (a division of DOCCS that is distinct from and not part of OMH).

**Plaintiff has been wrongfully excluded from residence in a Special Needs Unit.**

39.    Plaintiff has an intellectual disability and experiences continual difficulty adjusting to the prison environment because of his autism.

40.    Plaintiff's intellectual deficits and disability result in significant limitations on his effectiveness in meeting the standards expected for his age in the areas of communication, use of resources, self-direction, academic skills, social/interpersonal skills and work,

41.    Plaintiff was assigned to special education or Individual Education Plans continuously from at least eighth grade through the end of his formal schooling in twelfth grade.

42.    Plaintiff's school records reflect that in ninth grade Plaintiff took an IQ test and had an overall score of 84.

43.    Plaintiff was recently administered a WAIS test by DOCCS.  Plaintiff has repeatedly requested to be informed of the results of his WAIS test, including through a Freedom of Information Act request, and has received no information from DOCCS or OMH relating to his score on this test.

44.    DOCCS facility staff at Sing Sing referred Plaintiff for SNU placement on March 13, 2025.

45.    This referral was grossly underinclusive in the grounds for SNU placement adduced in the referral.

46.    Shortly after DOCCS facility staff referred Plaintiff for SNU placement, Plaintiff was advised that DOCCS Central Office refused the referral.

47.    Plaintiff received no explanation from DOCCS Central Office for its refusal of the referral of Plaintiff to a SNU.

8

48.    Plaintiff, through counsel, has requested a copy of the determination of DOCCS with respect to the DOCCS facility staff referral of Plaintiff for SNU placement, by letter and through a Freedom of Information Law Request.

49.    DOCCS has not responded to Plaintiff's requests for a copy of DOCCS's determination with respect to the referral of Plaintiff for SNU placement.

50.    DOCCS's SNU Program represents the most integrated DOCCS setting appropriate to the needs of Plaintiff.

51.    Until Plaintiff is housed in a SNU Unit, DOCCS will be violation of the regulations under the ADA.

**Plaintiff has exhausted his administrative remedies.**

52.    As required by the Prison Litigation Reform Act, 42 U.S.C. Section 1997e, Plaintiff has exhausted such administrative remedies as are available to Plaintiff.

53.    DOCCS has adopted its Incarcerated Grievance Program, Directive No. 4040 ("Directive 4040"), to govern the procedure by which individuals incarcerated in DOCCS facilities may file grievances and appeal any adverse determination and any failure to act upon or delay in acting upon any grievance.

54.    On January 3, 2026, Plaintiff submitted a grievance complaining of DOCCS's discrimination against him on the basis of his autism disability, containing facts demonstrating such discrimination that are substantially the same as the facts recited in this complaint, and requesting placement in a SNU.

55.    On January 24, 2026, the Incarcerated Grievance Program ("IGP") clerk at Sing Sing told Plaintiff that his grievance had been received.

56.    On February 5, 2026, the IGP clerk told Plaintiff that his grievance had been dismissed and that no hearing would be held.

9

57.     Plaintiff received no written explanation for the dismissal of his grievance.

58.     Plaintiff was verbally told by the IGP clerk that OMH, not DOCCS, determines placement of incarcerated individuals in a SNU, and therefore Plaintiff's grievance was not properly filed against DOCCS.

59.     Under DOCCS's SNU Manual, DOCCS determines whether an incarcerated individual is placed in a SNU.

60.     When Plaintiff was referred to a SNU in March of 2025, it was a DOCCS staff employee who made the referral.

61.     When this referral was denied, it was denied by DOCCS.

62.     On February 23, 2026, Plaintiff filed an application for review of the dismissal of his grievance in accordance with DOCCS Directive 4040.  The basis of this application was that Plaintiff's grievance was properly filed against DOCCS because it is DOCCS that makes determinations with respect to referrals for SNU placement.

63.     On March 10, 2026, Plaintiff's application for review of the dismissal of his grievance was returned to him without explanation.

64.     On March 18, 2026, Plaintiff filed an appeal to the superintendent of Sing Sing of the dismissal of his grievance in accordance with DOCCS Directive 4040.

65.     On April 7, 2026, the time provided under DOCCS Directive 4040 for the superintendent to act on Plaintiff's appeal expired without any action or reply to Plaintiff's appeal by the superintendent.

66.     On April 8, 2026, Plaintiff filed an appeal of the superintendent's failure to act on his appeal to the DOCCS Central Office Review Committee ("CORC") in accordance with DOCCS Directive 4040.

67.    On May 8, 2026, the time provided under DOCCS Directive 4040 for CORC to act on Plaintiff's appeal expired without any action or reply to Plaintiff's appeal by CORC.

68.    DOCCS Directive 4040 does not provide any further avenue of appeal of the dismissal of Plaintiff's grievance.

## FIRST CAUSE OF ACTION

### Americans with Disabilities Act (42 U.S.C. §§ 12101, et seq.); Section 504 of the Rehabilitation Act (29 U.S.C. § 794)

69.    Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of this Complaint.

70.    DOCCS is required by law not to discriminate against Plaintiff on the basis of his disability.  28 C.F.R. Section §35.152; 29 U.S.C. § 794.

71.    DOCCS systematically and continuously discriminates against Plaintiff by failing to provide any professional autism treatment or services and hence by excluding Plaintiff from meaningful participation in rehabilitative services that DOCCS provides to incarcerated individuals who do not have autism.

72.    Defendant is aware of Plaintiff's disability and disability-related need for accommodations, but has failed to provide reasonable accommodations to afford him equal access to DOCCS's programs, services, activities, and benefits.

73.    A justiciable controversy exists between Plaintiff and Defendant, and Plaintiff has no adequate remedy at law.

74.    Plaintiff is entitled by law and by the policy of the United States Department of Justice to maintain a private right of action to enforce against DOCCS the provisions of 28 C.F.R. §35.152; Cannon v. University of Chicago, 441 U.S. 677 (1979).

75.    Consequently, Plaintiff is entitled to declaratory and injunctive relief finding that DOCCS discriminates against Plaintiff and compelling DOCCS to remedy its discrimination against

11

Plaintiff by engaging qualified professionals who provide adequate treatment and services to individuals incarcerated under DOCCS's jurisdiction who suffer from autism spectrum disorders.

## SECOND CAUSE OF ACTION

### Americans with Disabilities Act (42 U.S.C. §§ 12101, et seq.); Section 504 of the Rehabilitation Act (29 U.S.C. § 794)

76. Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of this Complaint.

77. DOCCS is required by law to ensure that inmates or detainees with disabilities are housed in the most integrated setting appropriate to the needs of the individuals. 28 C.F.R. §35.152.

78. Although DOCCS's SNU Program does not include any professional treatment, services or programming that address Plaintiff's autism, the SNU Program represents the most integrated setting available in the DOCCS system for Plaintiff.

79. Consequently, Plaintiff is entitled to injunctive relief compelling DOCCS to place Plaintiff in a SNU Program immediately.

//

//

//

//

//

12

## RELIEF REQUESTED

Plaintiff prays for judgment as follows:

80.     A declaration that DOCCS discriminates against Plaintiff by failing to engage qualified professionals who provide treatment and services to Plaintiff for his autism;

81.     An injunction compelling DOCCS to remedy its discrimination against Plaintiff by engaging qualified professionals who provide adequate treatment and services to individuals incarcerated under DOCCS's jurisdiction who suffer from autism spectrum disorders;

82.     An injunction compelling DOCCS to place Plaintiff in a SNU Program immediately; and

83.     Such other and further relief as the Court deems just and proper.

Dated: New York, New York
      July 28, 2026

Respectfully submitted,

Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10036
(212) 790-4581

By: _____
    Andrew L. Morrison
    amorrison@manatt.com

*Attorneys For Plaintiff*

13